IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 8, 2026 Session

## JASON PATRICK MCCARROLL v. MELISSA SUSAN MCCARROLL

**Appeal from the General Sessions Court for Jackson County**
**No. 2020-DV-37    Tiffany Gentry Gipson, Judge**
———————————————————

**No. M2024-01804-COA-R3-CV**
———————————————————

This appeal concerns the trial court's division of marital debt and award of alimony in a divorce action. After the trial, the court assigned most of the marital assets and debts to the husband and awarded the wife alimony *in futuro* based on an affidavit that included her "anticipated" expenses. The court also awarded the wife alimony *in solido* to pay for her attorney's fees. The husband then filed a motion to alter or amend. While the motion was pending, the net proceeds from the sale of marital real estate were distributed to the parties. In its order on the husband's motion, the trial court reallocated responsibility for the balance on a credit card account in the husband's name, and it ordered the balance be paid out of the net proceeds from the real estate sale. On appeal, the husband argues that the trial court erred by relying on the wife's "speculative future needs" rather than her actual expenses at the time of trial when awarding alimony. The husband also argues that the court should have awarded rehabilitative alimony rather than alimony *in futuro* because the wife has several vocational certificates that she could use to obtain a better paying job. And both the husband and the wife contend that the division of marital debt was inequitable. We conclude that the parties have waived their objections to the division of marital debt and the award of alimony *in solido* by failing to comply with the briefing requirements of the Tennessee Rules of Appellate Procedure. As for the award of alimony *in futuro*, we find no error in the trial court's reliance on evidence of the wife's "anticipated expenses," and we find no support in the record for the husband's assertion that the wife could obtain a better paying job with her vocational certificates. Nonetheless, we find it necessary to modify the portion of the trial court's order requiring the parties to pay off the credit card with funds from the real estate proceeds because they were previously disbursed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed in Part; Modified in Part; and Remanded.**

FRANK G. CLEMENT JR., C.J., delivered the opinion of the Court, in which ANDY D. BENNETT and WILLIAM E. PHILLIPS II, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellant, Jason Patrick McCarroll.

Cindy Morgan, Sparta, Tennessee, for the appellee, Melissa Susan McCarroll.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In 1999, Jason Patrick McCarroll ("Husband") and Melissa Susan McCarroll ("Wife") were married in Seminole County, Florida, where they both worked for the Florida Department of Corrections. Ten years later, the couple moved to Oak Ridge, Tennessee, where Husband worked for a machining company, and Wife worked for a county jail.

In 2011, Wife quit her job to care for Husband's grandmother while Husband was serving abroad with the United States Naval Reserves. After Husband returned, Wife decided to reenter the workforce. But instead of returning to her old career, Wife completed a training program to become a certified unexploded ordnance technician.[1] However, Wife never used her certificate because the available jobs were contract based and required travel.

So, Wife enrolled in and completed a dental assistant certificate program. But for reasons unknown, Wife never worked as a dental assistant. Instead, she went back to school again to become an aesthetician. This time, Wife not only earned her certificate, but she also obtained a license and a job. Yet Wife abandoned that line of work after failing to secure enough clients to make the commute worth it. Wife then enrolled in a cosmetic laser hair removal course in Arizona. After completing that program, however, Wife discovered that she couldn't use her training in Tennessee, where only nurses may perform such procedures.

Around that time, in 2019, the parties sold their 1,800 sq. ft., three-bedroom, two-bath house in Oak Ridge and bought a 44-acre parcel of land in the Upper Cumberland area

---

[1] Wife explained the work of an unexploded ordnance technician as follows:

Q.      Unexploded ordinance [sic] tech, can you explain what that is?

A.      So military bases that—out West that had bombs dropped that didn't explode, a lot of those places are being turned back over to the government or—to build on, and they wanted those gone. So you would just have a metal detector. And if you found one and it was live, you blow it up in place. If not, it was cleaned up. You had to dig it up and take it out.

of Tennessee, near Clarksville. The couple planned to build a new home there while they lived in a travel trailer.

Meanwhile, Wife developed several health conditions for which she received regular treatment, including Botox injections for interstitial cystitis, medication for pre-diabetes, and periodic nerve ablation for back pain. Wife also underwent surgeries for uterine cancer in late 2019 and early 2020.

In July 2020, Husband moved out of the travel trailer and commenced this action for divorce. Wife then filed a countercomplaint and sought, *inter alia*, awards of temporary and long-term alimony.

After filing the Complaint, Husband took control of the parties' bank accounts, canceled Wife's car insurance, removed Wife from his health insurance, and stopped making payments on two credit cards in Wife's name. To make ends meet, Wife took a job working at a factory, where she earned about $14 per hour. Although Wife was awarded $500 a month in temporary alimony, she could not afford her medical care, and her credit cards went into default.

After a few months of living on her own, Wife moved to Ohio to live with her aunt. There, Wife took a job with Amazon, earning $17.50 per hour. Meanwhile, Husband moved onto a 200-acre farm with his girlfriend, Christy McCullough, and he took out a $26,000 loan to buy Ms. McCullough a new car. Husband also used marital funds to pay for Ms. McCullough's car insurance, and he began giving $1,000 a month to a local church.

In July 2022, the trial court granted the couple a divorce based on stipulated grounds, reserving all other issues for trial. Shortly after that, the couple sold their 44-acre property, netting approximately $100,000. The proceeds were placed in escrow with Wife's attorney pending the division of the marital estate. The court then authorized the distribution of $5,000 to Wife to pay some of her attorney's fees.

In March 2023, Wife moved to her sister's house in Florida, where she worked as a delivery driver earning $12 an hour. Eight months later, Wife obtained a job in the kitchen at the Tomoka Correctional Institution, where she worked 40 hours a week and earned $17 per hour.

A trial on the issues of alimony and the division of the marital estate was held in December 2023. The court heard testimony from Husband and Wife and accepted 14 exhibits into evidence, including the parties' affidavits of income and expenses. Wife executed her affidavit in September 2023, before she obtained the job at Tomoka. Thus, her affidavit listed an income of only $1,400 per month. Wife testified that she could no longer work as an unexploded ordnance technician or dental assistant due to her health conditions, and she could no longer work as an aesthetician in Tennessee because her license had expired. Wife also said that she could not work as an aesthetician in Florida

without further training. Regardless, Wife said none of those careers would pay more than she earned at Tomoka.

As for expenses, Wife's affidavit had two columns: one for "Current Expenses" and one for "Anticipated Expenses." The former represented her cost of living with her sister in Florida, which totaled $2,766.20 per month. The latter represented her cost of living "in a 1 bedroom apartment in the Upper Cumberland area of Tennessee" with "a lifestyle similar to the lifestyle [she] lived when married," which totaled $5,552.00 per month. Husband's affidavit, on the other hand, listed an income of $12,179.23 per month and expenses of $10,002.81 per month.[2]

The trial court issued its final decree in April 2024. As a preliminary matter, the court found Husband was "not a credible witness" and that there were "questions as to Wife's credibility." Nonetheless, the court made more specific credibility findings throughout its order, and it relied on testimony from both Husband and Wife in its findings of fact.

In its division of the marital estate, the court awarded Husband some $40,000 in cash[3] and about $89,000 in personal property, including an all-terrain vehicle ("ATV"), the travel trailer, and the Toyota Camry he bought for his girlfriend.[4] The court also assigned approximately $80,000 in debt to Husband, comprising loans associated with his girlfriend's car, the ATV, and the travel trailer, as well as half of the payoff amount for

---

[2] Husband's expenses included $500 for rent; $586 for telephone and internet service; $1,000 for food; $1,900 for transportation; and $3,000 for "Other Personal Items"—including $200 per month for "ammo"; $500 a month for dog food; $1,500 a month in charitable giving; and $600 a month for cattle feed. But Husband admitted that he did not actually pay rent, that the feed was for his girlfriend's cattle, and that his transportation expenses included his girlfriend's auto insurance and car payments.

[3] The $40,000 cash award included $4,700 from a bank account and $34,000 from the real estate proceeds.

[4] Specifically, the court awarded Husband a truck valued at $18,000; his girlfriend's car, valued at $26,000; a mower valued at $5,000; the ATV, valued at $5,500; a "pull behind" trailer valued at $1,500; the travel trailer, valued at $20,000; a motorcycle valued at $6,000; guns and knives valued at $7,643; and hunting equipment valued at $550.

Wife's credit cards.[5] In contrast, the court awarded Wife about $72,000 in cash, $500 in personal property, and $6,300 in marital debt.[6]

The trial court also granted Wife's request for long-term support. Based on the "Anticipated Expenses" in her Affidavit of Income and Expenses, the court found Wife needed $2,000 per month to achieve a standard of living comparable to that enjoyed during the marriage or that enjoyed by Husband after the divorce. The court found no evidence that Wife could reach this standard of living through further training or education, so it awarded Wife alimony in futuro in the amount of $2,000 per month. The court also awarded Wife alimony *in solido* in the amount of $15,000 for her reasonable attorney's fees and costs.

Husband then moved to alter or amend the judgment. Husband argued, *inter alia*, that the court should have awarded rehabilitative rather than periodic alimony because Wife could use her various certificates to "generate significant income." Husband also argued that the court should have awarded an amount based on Wife's "Current Expenses" rather than her "Anticipated Expenses," which Husband said were speculative. And Husband asserted that the trial court's division of the marital estate was inequitable due to the amount of debt assigned to Husband. In the meantime, the parties disbursed the real estate proceeds as ordered by the court.

After a hearing in October 2024, the trial court granted Husband's Motion to Alter or Amend in part and denied it in part. The court stood by its award of long-term alimony and its reliance on Wife's "Anticipated Expenses." Still, it recognized that the income on Wife's affidavit did not represent her income at the time of trial because Wife had started working at the Tomoka Correctional Institution. The court also found that Wife's Anticipated Expenses included $1,000 a month for credit cards that the parties would be paying off. Thus, the court found Wife's need to be $1,600 per month and modified its award accordingly. The court also modified its allocation of debt by ordering the parties to pay the $12,000 balance on Husband's CareCredit card "directly from the proceeds of the real estate sale, allowing each party to share in the obligation equally."

This appeal followed.

---

[5] Husband's portion of the marital debt included the $26,000 loan associated with his girlfriend's car; a $5,000 loan associated with the ATV; a $20,000 loan associated with the travel trailer; $23,000 in credit card debt in Husband's name; and $6,300 for half of Wife's credit card debt.

[6] Wife's cash award included the $5,000 that was distributed to her during the pendency of the divorce; $66,000 from the real estate proceeds; and $1,000 from Wife's retirement account. The only personal property awarded to Wife was a 2013 Fiat valued at $500, and the only marital debt assigned to Wife was half of her credit card debt.

## ISSUES

Husband raises six issues on appeal, which we consolidate as follows:

(1) Should Wife's alimony be reduced to match her stated actual need rather than her speculative future needs, especially where the trial court severely questioned Wife's credibility?

(2) Did the trial court err by awarding periodic rather than rehabilitative alimony when Wife has five different professional certifications and licenses, is working as a corrections officer, and has no corroboration for her claimed health issues?

(3) Did the trial court's imposition of 85% of the marital debt on Husband, resulting in a mere net 39% of the marital estate being awarded to him, inequitably divide the marital estate?

(4) Did the trial court err by ordering the parties to pay Husband's credit card debt from the proceeds of the real estate sale when those funds had already been distributed?

(5) Did the trial court err in awarding alimony *in solido* for attorneys' fees when Wife's assets awarded her in the property division were sufficient to pay those fees, thus she had no need?

For her part, Wife asks for an award of her reasonable attorney's fees and costs incurred in defending this appeal.

## STANDARD OF REVIEW

Trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). Appellate courts will decline to second-guess a trial court's decision absent an abuse of discretion. *Id.* (citation omitted).

Decisions to award alimony are generally within the discretion of the trial court, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011), and discretionary decisions are reviewed under the "abuse of discretion" standard of review, *see Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). When applying this standard, we look first at whether the factual basis for the trial court's decision is supported by evidence in the record." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020). We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d)." *Lee Med., Inc.*, 312 S.W.3d at 525. We then look at whether the trial court identified and applied the correct legal principles relevant to its decision. *See Harmon*, 594 S.W.3d at 306. Our review of the trial court's legal

determinations is "de novo without any presumption of correctness." *Lee Med., Inc.*, 312 S.W.3d at 525. Finally, we look at "whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id.* When doing so, we are mindful of the inherent limitations in the abuse of discretion standard:

> [B]ecause, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen. Accordingly, if the reviewing court determines that reasonable minds can disagree with the propriety of the decision, the decision should be affirmed.

*Harmon*, 594 S.W.3d at 306 (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019)).

**ANALYSIS**

**I. RELIANCE ON "ANTICIPATED EXPENSES"**

Husband contends that the trial court abused its discretion by awarding alimony *in futuro* based on "Wife's speculation about her potential future expenses" rather than "her actual need at the time of trial." According to Husband, Wife's Affidavit of Income and Expenses showed "an actual current need of $552 a month"—well below the $1,600 awarded. Moreover, Husband contends that the court found Wife not credible and that "speculation from a non-credible person like Ms. McCarroll about undocumented and non-existent future expenses cannot properly provide a proper basis for an alimony award."

First, we find no support for Husband's assertion that Wife's "actual need" was only $552 per month. Husband relies on a handwritten number at the very bottom of the "Current Expenses" column in Wife's affidavit, which appears to be "-552.00." This notation was not discussed at trial, is of unknown origin, and is irreconcilable with any combination of the numbers presented by Wife and found by the court. According to the affidavit, Wife's "Current Expenses" were $2,766.20 and her income was $1,900.00. Thus, per the arithmetic operation of subtraction, we deduce that Wife's need based on her Current Expenses was $866.20.

We also find no support for Husband's contention that the trial court found Wife's evidence of her income and expenses was not credible. In its Final Order, the court said that—in general—it had "questions as to Wife's credibility" because "she was evasive in

response to cross examination and her testimony was largely self-serving."[7] Neither party, however, elicited testimony from Wife about her expenses. Rather, the only evidence of Wife's expenses was her affidavit.[8] That the trial court found Wife's oral testimony generally "questionable" does not mean the trial court found the contents of Wife's affidavit was not credible. Moreover, "the trial court's findings with respect to credibility . . . generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case." *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733–34 (Tenn. 2002). Here, the court found that Wife needed $1,600 based on the anticipated expenses in her affidavit; thus, the court found Wife's affidavit credible.[9]

Husband also contends that the trial court abused its discretion by awarding alimony *in futuro* based on "Wife's speculation about her potential future expenses," i.e., her "Anticipated Expenses."

The party seeking alimony bears the burden of proving their need. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 120 (Tenn. 2012). Need "is generally determined by consideration of the party's reasonable expenses." *Masserano v. Masserano*, No. W2018-01592-COA-R3-CV, 2019 WL 2207476, at *10 (Tenn. Ct. App. May 22, 2019) (citation omitted). A spouse's "need" for alimony "should be determined in relation to the marital standard of living" or "the post-divorce standard of living expected to be available to the other spouse." *Tait v. Tait*, 207 S.W.3d 270, 276 (Tenn. Ct. App. 2006); *see also* Tenn. Code Ann. § 36-5-121(d)(2), (f)(1). But evidence of a party's need is not limited to evidence of the party's actual expenses at the time of the divorce. It may include evidence of anticipated income and expenses. *See*, *e.g.*, *Shadoin v. Shadoin*, No. 85-218-II, 1986

---

[7] In contrast, the court found that Husband was "not a credible witness," that his testimony on income was "inconsistent with the proof," and that he was "untruthful about residing with his girlfriend."

[8] "The Tennessee Rules of Civil Procedure do not provide for the use of affidavits as evidence at trial except by consent." *Nagarajan v. Terry*, 151 S.W.3d 166, 178 (Tenn. Ct. App. 2003) (citations omitted). Here, Husband did not object to the introduction of Wife's affidavit as proof of her expenses. Moreover, when the trial court asked Husband's attorney if she wished to ask Wife about the expenses in her affidavit, Husband's attorney declined to do so.

[9] Husband also incorrectly states that "[t]he trial court found that Wife had underrepresented her income." In its Order on Plaintiff's Motion to Alter or Amend, the trial court found that Wife's Affidavit "listed her monthly income as $1400.00 (plus $500 in temporary alimony)" but that Wife's post-divorce income "would actually be $2,946.66." The court based this finding on Wife's testimony "that she was very recently employed at Aramark . . . , making $17/hour, working 40 hours per week." Thus, the discrepancy between Wife's affidavit and her testimony is attributable to the fact that Wife executed her affidavit in September 2023 when she was making $1,400 a month as a delivery driver and the fact that Wife obtained a higher paying job shortly before trial.

WL 8975, at *3 (Tenn. Ct. App. Aug. 20, 1986) (affirming finding of need based on wife's "anticipated expenses" for purposes of awarding alimony *in futuro*).

For these reasons, we find no error in the trial court's reliance on the anticipated expenses in Wife's Affidavit of Income and Expenses.

## II. TYPE OF ALIMONY

Husband also contends that the court should have awarded rehabilitative rather than periodic alimony. Husband asserts that Wife can reach a lifestyle comparable to his because she obtained "lucrative certifications" during the marriage. Moreover, Husband alleges that jobs using Wife's certifications "were reasonably available to [Wife] with some adjustments either as to location or reinstating [her expired credentials]." Thus, Husband reasons, "[W]ith a little bit of effort from [Wife], she could earn more than she is [earning] as a corrections officer."

Husband has not, however, cited any evidence in the record to support his allegation that jobs using Wife's certifications were "reasonably available." Nor has Husband cited any evidence that those jobs paid "more than she is [earning] as a corrections officer." "[W]e are not required to verify unsupported allegations in a party's brief by painstakingly reviewing the record." *Duchow v. Whalen*, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993). Contrary to Husband's assertions, Wife testified that she earned more working at the Tomoka Correctional Institution than she would using her credentials.

Husband also contends that the trial court erred by relying on Wife's "disputed and undocumented" testimony about her health problems. But Husband has cited no authority to support the proposition that an economically disadvantaged spouse must present documentary evidence to corroborate testimony about their health. We are unaware of such a requirement, and "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

Likewise, Husband has not cited authority for the proposition that trial courts cannot rely on "disputed" or conflicting evidence. It is axiomatic that "the role of the trial judge, who has seen the witnesses and has heard their testimony first-hand, is to resolve [conflicting testimony]." *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 734 (Tenn. 2002). Moreover, to show that Wife's testimony was "disputed," Husband quotes parts of his own testimony in which he said that Wife worked during the marriage and could hold a job. Those statements, however, do not create a dispute on whether Wife's health prevented her from working in the professions in which she was credentialed. More importantly, Wife was working full time at the time of trial earning $17 per hour at Tomoka, and Husband did not introduce any competent evidence to show that Wife, if rehabilitated, would earn a greater income than she was presently making at Tomoka.

For these reasons, we conclude that the evidence does not preponderate against the trial court's finding that Wife could not be rehabilitated. Accordingly, the court did not err by awarding periodic rather than rehabilitative alimony.

## III. DIVISION OF MARITAL DEBT

Husband also contends that the trial court abused its discretion by assigning 85% of the marital debt to him. Husband contends this division was "inherently inequitable," and he asks this court to reallocate the marital debt so the parties share equal responsibility.

"'[M]arital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). "[T]he trial court has broad discretion and should do equity in allocating debt as one part of the overall distribution of marital property." *Id*. at 814. "Tennessee courts should use the four factors listed in *Mondelli* [*v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989)] as guidelines in the equitable distribution of marital debt: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford*, 120 S.W.3d at 814. Moreover, "[m]arital debts should, where possible, follow their associated assets." *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998)).

We conclude that Husband has waived this issue by not developing a complete legal argument in his appellate brief. Husband acknowledges and even cites authority for the proposition that an equitable division is not necessarily an equal one. Still, he does not address the *Mondelli* factors, much less cite that case. Instead, he simply argues that the division was inequitable because the trial court failed to use a spreadsheet listing all property and debt. He reasons, "Without this tool, it is respectfully submitted that the ruling drifted into inequity." But Husband has not pointed to any authority to support his position that the trial court should have used a spreadsheet. "The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400–01 (Tenn. Ct. App. 2006) (citations omitted).

For these reasons, we find no reversible error in the trial court's division of the marital debt.

## IV. REALLOCATION OF CARECREDIT DEBT

Wife contends that the trial court erred by reallocating half of the CareCredit debt to her in its Order on Husband's Motion to Alter or Amend. We conclude that Wife has waived this issue by failing to comply with the Tennessee Rules of Appellate Procedure.

"[T]he Rules of Appellate Procedure, are 'laws' of this state, in full force and effect, until such time as they are superseded by legislative enactment or inconsistent rules promulgated by this Court and adopted by the General Assembly." *Tennessee Dep't of Hum. Servs. v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980). Rule 27 of the Tennessee Rules of Appellate Procedure requires parties seeking relief on appeal to include "[a] statement of the issues presented for review" in their briefs to this court. Tenn. R. App. P. 27(a)(4). "[T]he statement of issues ensures that the opposing party has notice of the issues to which it must respond, and further ensures that the reviewing court is not tasked with scouring the record for reversible errors." *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024) (per curiam). The appealing party must also include an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief." Tenn. R. App. P. 27(a)(7). "A skeletal argument that is really nothing more than an assertion will not properly preserve a claim, especially when the brief presents a multitude of other arguments." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)).

In her appellate brief, Wife argues that the trial court's "modification to the debt allocation was done without proper consideration as to the allocation of assets" and that "requiring Wife to pay a portion of said Care Credit card would not be equitable." Wife did not, however, identify this as an issue presented for review. *See* Tenn. R. App. P. 27(a)(4). Moreover, Wife cites no authority and develops no legal argument to support her conclusory assertion of error. For these reasons, we decline to address the issue.

## V. PAYMENT OF CARE CREDIT DEBT

Husband contends that the trial court erred in ordering the parties to pay off the CareCredit debt with funds from the real estate sale because those funds had already been distributed by the time the court entered its order.

Husband cites no authority relevant to this issue, and Wife does not address it in her appellate brief. Still, we recognize the practical problem that the parties face. In its Order on Husband's Motion to Alter or Amend, the court found "it appropriate to amend its prior ruling and allow for the payment of [the Synchrony] debt to be paid directly from the proceeds of the real estate sale, allowing for each party to share in the obligation equally." Although the debt can no longer be paid directly from the real estate proceeds, it can still be divided equally between the parties.

The CareCredit account was in Husband's name and had a balance of $12,078.60. Because the real estate proceeds have been distributed, we find it appropriate to modify the trial court's order to require Wife to tender funds to Husband for her one-half share of the debt and for Husband to be solely responsible for the balance owing on the CareCredit account. Thus, we remand with instructions for the trial court to modify the judgment accordingly.

- 11 -

## VI. ALIMONY IN SOLIDO

Husband further argues that it was error for the trial court to award Wife $15,000 in alimony *in solido* for her attorney's fees because "there was no demonstrated need." But we conclude that Husband has waived this issue well by not citing any authority to support his position on appeal. *See Newcomb*, 222 S.W.3d at 400–01.

"As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i)." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). Husband's brief, however, does not apply those factors, much less cite them. As already stated, "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed*, 301 S.W.3d at 615. Accordingly, we decline to address this issue as well.

## VII. APPELLATE ATTORNEY'S FEES

Wife has asked for an award of her appellate attorney's fees under Tennessee Code Annotated § 36-5-103(c), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103.

We conclude that § 36-5-103 is inapplicable because Wife was not seeking "to enforce, alter, change, or modify a[] decree of alimony, child support, or provision of a permanent parenting plan order," and this is not a "suit or action concerning the adjudication of the custody or change of custody of any children." Accordingly, we deny Wife's request.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and modified in part, and this matter is remanded with costs of appeal assessed against the appellant, Jason Patrick McCarroll.

_____
FRANK G. CLEMENT JR., C.J.